633 So.2d 337 (1993)
STATE of Louisiana
v.
John Perry PENN.
No. 93 KA 0174.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Stephen P. Callahan, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
James Alcock, Houma, for defendant and appellantJohn Perry Penn.
Before EDWARDS, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
Defendant, John Perry Penn, was charged by bill of information with indecent behavior with a juvenile, a violation of La.R.S. 14:81. He entered a plea of nolo contendere to the charge. Subsequently, the trial court sentenced defendant to imprisonment at hard labor for a term of seven years, with credit for time served. Pursuant to La.C.Cr.P. art. 881.1, defendant filed a motion to reconsider sentence, which the trial court denied. Defendant has appealed, urging the following two assignments of error:
1. The trial court erred in failing to state for the record the aggravating and mitigating circumstances present in imposing *338 sentence as required by La.C.Cr.P. art. 894.1.
2. The trial court erred in imposing an excessive sentence.
The factual background of the instant offense is revealed by the presentence investigation (PSI) report. The offense occurred in 1987. At that time, the female victim was twelve years old, and was in the seventh grade at Coteau Bayou Blue School in Terrebonne Parish. Defendant, who was forty years old, was her teacher. In January of 1987, the victim confided in defendant about a personal problem she was having. Defendant seemed very kind and compassionate and gave her his home telephone number. The victim called defendant that same night to talk to him about her problem. During the conversation, defendant changed the subject and began questioning the victim about her sexual experiences. Defendant asked her if she had ever made herself "feel good." When the victim asked defendant what he meant, he told her how to masturbate. Thereafter, the victim went to defendant's classroom during lunch break each day. During February of 1987, defendant began to kiss the victim, fondle her breasts and "feel her all over." While in the classroom, defendant "fingered [her.]" Each day defendant increased his "sexual actions" until he engaged in oral sex with the victim in June or July.
After rumors began surfacing at the school concerning defendant and the victim, the victim and her parents were called to the principal's office in March of 1987 to discuss the rumors. The victim denied that there was any truth to the rumors and was allowed to go back to class. The victim later explained to authorities that defendant had told her not to tell anyone what had been going on because it was illegal and, if she told anyone, they both would get into trouble. According to the victim, these were the reasons she did not tell anyone.
The PSI report further reflects that, after defendant apparently resigned his position at the school, he joined the same church which the victim and her family attended. The sexual activity between the victim and defendant continued and occurred even in the halls at the church with defendant "finger[ing her]. The victim related that she and her family went to defendant's home for lunch after church in July; and, while they were there, she and defendant performed oral sex on each other.
In August of 1987, the victim telephoned defendant and told him that she wanted to cease the sexual activity with him. Defendant cried and kept telling the victim that he loved her. The victim hung up the telephone and felt guilty. She called defendant later that night and told him she was sorry, which made him happy. Two days later, the victim called defendant back and told him the activity had to end because it was not right. Defendant again cried. The matter was subsequently reported to the police in July of 1989.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
By means of these assignments, defendant contends that under the new sentencing guidelines the designated sentencing range for the instant offense is found in Grid Cell G-5 since he is a first felony offender (giving him a criminal history index of 0) and the crime seriousness level for this offense is 5. He asserts that, since that Grid Cell falls within the Intermediate Sanction Zone, the sentencing range for this offense is a suspended sentence of 8-5 months with 120-80 sanction units as provided in that Grid Cell.[1] Defendant submits that the trial court's drastic upward departure from the applicable sentencing range cannot be justified and that the court made no effort to comply with the sentencing guidelines. Defendant concludes that the maximum statutory sentence he received is excessive.
This Court will not set aside a sentence solely because of the trial court's failure to impose the sentence in conformity with the new sentencing guidelines. See, La.C.Cr.P. *339 arts. 881.6 and 894.1(A) See also, La.C.Cr.P. art. 881.4(D). Furthermore, this Court will not set aside a sentence on the ground of excessiveness if the record supports the sentence imposed. See, La.C.Cr.P. art. 881.4(D).
The penalty provided by statute for indecent behavior with a juvenile is imprisonment with or without hard labor for a maximum period of seven years and a possible fine of not more than five thousand dollars. La.R.S. 14:81. Herein, defendant received the maximum sentence of seven years at hard labor, with credit for time served, and no fine was imposed. Maximum sentences are appropriately imposed only for the most serious violations of the described offense and for the worst kind of offenders. State v. Chaney, 537 So.2d 313, 317 (La.App. 1st Cir. 1988), writ denied, 541 So.2d 870 (1989); State v. Leason, 477 So.2d. 771, 779 (La.App. 1st Cir.1985).
At defendant's sentencing hearing, defendant was afforded the opportunity to present evidence on his behalf. In availing himself of that opportunity, defendant presented his own testimony and that of Ms. Addie Gail Parrott, his supervisor at the Terrebonne Council on Aging, where he worked as a van driver.
Defendant testified that he was currently working as a van driver and had been so employed for almost five years. Prior to that time, he had been employed as a teacher with the school board for four years. Defendant stated that he is an only child and currently was living with his seventy-eight year old mother, who is bedridden and suffering from chronic lung disease, emphysema, and heart problems. According to defendant, he does housekeeping and a majority of the cooking for himself and his mother and assists in the care of his ailing mother. Defendant stated that he "assume[d]" that if he were incarcerated it would cause problems for his mother, particularly in regard to her state of health, since he had few remaining relatives and none lived nearby.
Ms. Parrott testified that defendant's duties with the Council on Aging included delivery of meals, picking up people, and transporting individuals to sites. According to Ms. Parrott, defendant is a very dependable person, who everyone loves. She indicated that there had not been any allegations of improprieties perpetrated by defendant on any of the people with whom he comes into contact in his employment capacity. She also stated that if defendant was given a suspended sentence he would continue to have his job at the Council on Aging, and that she wished the court would impose a suspended sentence.
In its initial sentencing remarks, the trial court noted that it had ordered a presentence investigation report in this case and indicated that it had considered its contents. The court also indicated that, since it was deviating from the sentencing guidelines, it would state its reasons therefor.
In stating its additional sentencing reasons, the court noted that defendant had come into contact with the victim, one of his students, during the time he worked as a school teacher in the Terrebonne Parish School System. The court stated that defendant actively pursued the victim and enticed her into lascivious acts on the telephone and that defendant continued to pursue her and perform many acts of molestation of the victim in the classroom. The court noted that the acts continued for an extended period of time. The court further noted that defendant had even joined the same church attended by the victim, and that the acts continued to occur even at the church. The court noted that the acts also occurred at defendant's home, culminating in two acts of oral sex between defendant and the victim. Consistent with the presentence investigation report, the court noted that defendant had attempted to pursue another of his young female students, that this pursuit was of short duration, and that she had fended him off. In concluding its sentencing reasons, the court described defendant's conduct with the victim as heinous, noting that defendant had taken advantage of a young child under his care as a teacher and had molested her constantly and continuously for an extended period of time.
In our view, the circumstances of the instant offense clearly distinguish this case *340 from the typical case of indecent behavior with a juvenile. In violating his position of trust as a teacher, defendant exploited that position by taking advantage of the vulnerability of his youthful victim over whom he had been entrusted with care and supervision. Rather than consisting of a single or even a few acts of indiscretion, the record reflects that defendant repeatedly engaged in these acts over a period of many months. Under these circumstances, we find no abuse of discretion in the trial court's upward departure from the new sentencing guidelines or in the imposition of the maximum statutory sentence for this offense. The sentence imposed is supported by the record and is not excessive. Hence, these assignments lack merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Although the record reflects that Grid Cell G-5 is applicable to defendant, an examination of that Cell shows that the designated sentencing range is 30-15 months suspended (and not 8-5 as stated by defendant) with 120-80 sanction units.