STATE OF LOUISIANA

VERSUS

EDIN O. MELGAR

NO. 19-KA-540

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-6263, DIVISION "D"
HONORABLE SCOTT U. SCHLEGEL, JUDGE PRESIDING


April 30, 2020


**SUSAN M. CHEHARDY**
**CHIEF JUDGE**


Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Stephen J. Windhorst


**SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF THE**
**UNIFORM COMMITMENT ORDER**
    **SMC**
    **FHW**
    **SJW**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Gail D. Schlosser
     Zachary P. Popovich
     Lynn Schiffman

COUNSEL FOR DEFENDANT/APPELLANT,
EDIN O. MELGAR
     Lieu T. Vo Clark

**CHEHARDY, C.J.**

In this appeal, defendant, Edin O. Melgar, seeks review of the excessiveness of his sentences for convictions of sexual battery on a juvenile under the age of thirteen and indecent behavior with a juvenile under thirteen. For the following reasons, we affirm defendant's sentences, and we remand for the correction of an error patent on the face of the record.

**PROCEDURAL HISTORY**

On November 20, 2018, the Jefferson Parish District Attorney's office filed a bill of information charging defendant with sexual battery of a juvenile under thirteen, in violation of La. R.S. 14:43.1 (count one), and with indecent behavior with a juvenile under thirteen, in violation of La. R.S. 14:81 (count two). Defendant pled not guilty at his arraignment. On August 7 and 8, 2019, the matter proceeded to trial before a twelve-person jury. An interpreter was present for defendant at trial. The jury unanimously found defendant guilty as charged on both counts.

On August 21, 2019, defendant filed a motion for new trial, which the trial court denied. That same day, the trial court sentenced defendant on the sexual battery charge to seventy years imprisonment at hard labor, and further sentenced him to twenty-five years at hard labor for his indecent behavior conviction. The trial court ordered that these sentences run concurrently with one another and without benefit of parole, probation, or suspension of sentence. Further, the trial court ordered that should defendant be released from prison, he must register as a sex offender for life. Defendant filed a motion to reconsider sentence, which was denied. Defendant now appeals challenging his sentences as unconstitutionally excessive and challenging the denial of his motion to reconsider sentence.

**FACTS**

S.E., the mother of the victim, G.E., testified that she met defendant, Edin Melgar, in 2010 or 2011 while living in South Carolina. At that time, G.E. was a toddler and living with S.E.'s parents in El Salvador. Defendant and S.E. began dating and eventually moved to Metairie, Louisiana, and lived with one another. G.E., who was four years old, moved to Metairie to live with defendant and her mother. S.E. testified that she and defendant eventually married and subsequently had two children together. According to S.E., while not biologically related, G.E. looked to defendant as a father figure as evidenced by her calling him "Poppi" or "Daddy."

S.E. further testified that in 2016, she and defendant attended and volunteered at Good Shepherd Baptist Church in Metairie. According to S.E., when she volunteered at the church by herself, defendant would remain at home to take care of the children. G.E. was nine years old in 2016.

At the time of trial, G.E. was twelve years old and going into the seventh grade. She testified that she lived with her grandparents in El Salvador until the age of three-and-a-half when she moved to Metairie to live with her mother and stepfather, defendant, whom she called "Poppi." G.E. considered him a father figure. G.E. told the jury that defendant began touching her "private parts," and having her touch his, when she was nine and in the fourth grade. According to G.E., the first incident occurred while she was doing her homework and defendant called her into his bedroom. When she went into his room and realized defendant was naked, she immediately tried to leave. Defendant, however, grabbed her arm, sat her on a stool, and instructed her to touch his "private parts." G.E. testified that she endured several similar encounters between her and defendant over the next two years; most incidents occurred on Sundays when defendant was off of work. G.E. stated that there were times when her mother was actually in the house when

these sexual things happened, but because defendant had threatened to harm her if she told anyone, G.E. did not call out to her mother. G.E. expressed that she continues to be afraid as a result of the things that happened to her, so much so that she declined to make a month-long planned visit with her biological father in New York for fear that the same thing would happen whenever she was alone with a man, and she was afraid that her father was going to take her away from her mom.

G.E. described for the jury an incident that occurred when she and her two half-sisters were home alone with defendant. On this occasion, G.E. was in the bathroom when defendant walked in and closed the door. He then proceeded to remove G.E.'s shorts and underwear, began touching her, and directed her to squat down. When G.E. told him "no," defendant asked her, "Do you want me to make you pregnant or do you want the finger?" Feeling as if she had no choice and no way to get out of the bathroom fast enough, G.E. testified that she told him "the finger." Defendant then pushed his finger up G.E.'s vagina, which she testified "hurt." G.E. stated that she "kind of yelled" and her sisters heard, prompting one sister to attempt to enter the bathroom by sticking her hand inside the door, but defendant "slammed the door and kind of grabbed her arm with the door."

G.E. testified that when she was a little bit older, defendant gave her a cell phone. G.E. stated that defendant falsely accused her of watching YouTube videos about "people having sex," which videos defendant then showed to her. When G.E. was approximately eleven years old, defendant started texting her and asking that she send him nude pictures of herself—"pictures of [her] front private parts and [her] back private parts"—which G.E. stated she did not do.

On September 26, 2018, when G.E. was eleven years old, G.E. testified that she was alone in her bedroom doing her homework and was also texting defendant on her cell phone, when her mother unexpectedly walked in. G.E. stated that she threw the phone onto the bed attempting to hide it from her mother because she

thought "[defendant] was going to get mad and that he was going to hit [her] or get violent." S.E. then snatched G.E.'s phone, started reading the open messages, including a message from defendant to G.E. asking her to send him a photograph, and a message from G.E. to defendant asking if he could "please wait until [her] period is over." When asked by S.E. what the messages meant, G.E. testified that she finally divulged to her mother that defendant had been touching her private parts since she was nine years old.

The following day, S.E. contacted the family's pastor at Good Shepherd, Gonzalo Rodriguez, to schedule a family meeting. S.E., G.E. and Mr. Rodriguez testified that on September 28, 2018, S.E., G.E. and defendant met with Mr. Rodriguez at the church. Mr. Rodriguez first met with S.E. and defendant and then met privately with G.E. During the private meeting, Mr. Rodriguez explained to G.E. that she had the right to call the police and report what happened. At G.E.'s request, Mr. Rodriguez and G.E. called 911, and defendant left the church. A portion of a recording the 911 call was played for the jury.

Deputy Steve Mehrtens of the Jefferson Parish Sheriff's Office ("JPSO") testified that he was dispatched to the church on September 28, 2018. According to Deputy Merhtens, he was responding to a report called in by a mother concerning her daughter who was being victimized by the mother's "significant other." Upon his arrival at the church, Deputy Merhtens spoke to S.E. and the church's pastor. Deputy Merhtens then spoke to G.E. while her mother and the pastor observed from a distance in the same room. Deputy Merhtens testified that during this conversation, G.E. was "actually very confident in her answers." Based on his conversation with G.E. and her disclosure of sexual abuse, Deputy Mehrtens stated that he followed procedure by calling in a personal violence detective.

Deputy Judd Harris testified that at the time of these events, he was a JPSO detective assigned to the Personal Violence Unit and responded to the church on

September 28, 2018. Deputy Harris stated that upon his arrival, G.E. and S.E. were with their pastor. Deputy Harris testified that he spoke privately with G.E, who provided him with a brief disclosure of what defendant had done to her. Specifically, G.E. told Deputy Harris that she had received text messages from defendant and that he had verbally asked her to send him nude photographs of herself. G.E. showed him the text messages, which were written in Spanish, and told him that she refused to send defendant the photographs because she was on her period.

Deputy Harris and G.E. testified that later that evening, while at the JPSO Investigations Bureau, G.E. was shown a photograph and was instructed to identify the person depicted therein, tell how she knew him, and describe what happened. On the back of the photograph, G.E. identified her stepdad, Edin Melgar, defendant, as the person in the picture, and wrote, "He sexually abused me." Deputy Harris stated that G.E. told him that defendant's last attempt to sexually abuse her was on September 10, 2018. Deputy Harris testified that, at a later date, he went to the Jefferson Children's Advocacy Center ("Jefferson CAC"), where he observed G.E. from a separate monitoring room provide a detailed disclosure consistent with what she had previously related to him at the church.

Ericka Dupepe, the current executive director of Jefferson CAC and an expert in the field of forensic interviewing, testified that with a court-certified translator present in the room, she conducted the forensic interview of G.E., which was videotaped and recorded on October 9, 2018. The videotaped recording of the interview was played for the jury. In the video, G.E. described the incident where defendant, who was naked, called her into his bedroom and attempted to touch her "privates." G.E. recalled that she was crying when he did this. G.E. stated that defendant did this to her several times while her mother was away from the home. She explained that she did not tell her mother for fear that defendant would hit her

with a belt. G.E. said that defendant gave her a cell phone when she was in the fifth grade and told her to send him naked pictures of herself. G.E. described multiple instances when defendant touched her "private parts" and, throughout the interview, repeatedly expressed that she did not like it when defendant did so. G.E. recounted that after one such incident, she cried and defendant had them pray together. During the interview, G.E. also described an event that occurred in a McDonald's parking lot while she and defendant were seated in the back seat of a parked car and defendant attempted to put his "private part" inside of her. G.E. stated that this was not the only time defendant tried to do this. In addition to these incidents, G.E. told Ms. Dupepe that defendant kissed her on the mouth and neck, and that he once took a video of her taking a bath.

At trial, J.C., then twenty years old and currently living in South Carolina, testified that she moved from Ecuador to South Carolina when she was in the third grade to live with her mother, brother, and defendant, whom her mother was dating at the time. J.C. testified that, while in elementary school and defendant was living with her family, "something happened" between her and defendant on "more than three" occasions. J.C. described one such incident that occurred when her mother was not home. According to J.C., she was alone in her bedroom when defendant began repeatedly knocking on her door until she answered it. When she opened the door, defendant took J.C. into her mother's room, laid her down on the bed, removed her underwear, and "put his private part inside [her] private part." J.C. testified that "sometimes there would be a little - - a little fight. [She] would try to fight back and tell him to stop, and he [would] just keep going until he finished whatever - - what he was doing" with his penis inside of her. J.C. explained that she did not tell anyone what defendant was doing to her because defendant threatened to hurt her and made her afraid that she would be separated from her mother or that harm would come to her family.

J.C. testified that she moved with her mother and brother to an apartment without defendant because he was no longer dating her mother. Nonetheless, defendant continued to come to the apartment when J.C.'s mother was not at home.[1] J.C. testified that defendant would knock on the door and once inside, he would take J.C. to her mother's bedroom, and the "same process [occurred] again." That is, defendant would remove his underwear and hers, and "his private part would be inside [her] private part." J.C. testified that she would tell defendant to "stop," but to no avail. Again, J.C. did not tell anyone about the incidents because defendant repeatedly threatened to harm her and/or her family, and told her that she would be taken away from her family if she said anything. Eventually, J.C. did tell her brother and then her mother about what defendant had done to her at the apartment and they filed a police report.

By stipulation, Anne Troy, forensic nurse practitioner at the Audrey Hepburn Care Center, was accepted as an expert in the field of forensic pediatrics and child abuse. Dr. Troy stated that she personally interviewed and examined G.E. on two occasions; namely, October 13 and October 20, 2018. The interview with G.E. was recorded and played for the jury at trial. Dr. Troy testified that her physical examination of G.E. was normal, which is what one would expect in a case such as this. According to Dr. Troy, G.E. was "very spontaneous" in response to questioning and was "very articulate in detail" when describing the actions of defendant. G.E. was able to give Dr. Troy "details that were sensory in nature in terms of how things looked and what happened immediately after that." Dr. Troy did not detect that G.E. had been coached with respect to any of her responses. Dr. Troy testified that G.E. related to her an incident where defendant "ejaculated into his hands, and told her that if boys do this inside of you, you'll get pregnant." G.E. described to Dr. Troy that "it was very gross" and that defendant "went into the

---

[1] J.C. testified that her mother worked from 4:00 a.m. to 4:00 p.m.

bathroom and washed it off." Dr. Troy stated that G.E. told her that defendant repeatedly "inserted his fingers into her vaginal area, and that he had multiple times attempted to put his penis in as well." G.E. also articulated to Dr. Troy that defendant "wanted [G.E.'s] hand on his penis."

Dr. Troy testified that, although G.E. did not immediately report her step-father's actions, it was common for children of G.E.'s age not to come forward with allegations of sexual abuse right after that abuse starts. In G.E.'s case, Dr. Troy testified that defendant threatened G.E. with physical violence if she disclosed the abuse, and that G.E. expressed fear that her sisters would lose their father if she told. Dr. Troy testified that "from a medical diagnosis, that [G.E.'s] history was consistent with sexual abuse."

## ASSIGNMENTS OF ERROR

On appeal, defendant alleges that the seventy-year and twenty-five-year concurrent sentences imposed upon him are unconstitutionally excessive and that, as such, the trial court erred in denying the motion to reconsider sentence.

## LAW AND ANALYSIS

Defendant was charged with one count of sexual battery of a juvenile under thirteen in violation of La. R.S. 14:43.1 (count 1), and one count of indecent behavior with a juvenile under thirteen in violation of La. R.S. 14.81 (count 2). The jury returned a verdict of guilty as charged as to both counts. Pursuant to La. R.S. 14:43.1(C)(2), a defendant who is over the age of seventeen and is convicted of sexual battery on a victim under the age of thirteen shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed must be served without benefit of parole, probation, or suspension of sentence. According to La. R.S. 14:81(H)(2), a defendant who is over the age of seventeen and is convicted of indecent behavior with a juvenile under the age of thirteen years old

shall be punished by imprisonment at hard labor for not less than two years nor more than twenty-five years. At least two years of the sentence imposed must be served without benefit of parole, probation, or suspension of sentence.

On August 21, 2019, the trial court sentenced defendant to seventy years imprisonment at hard labor for the sexual battery conviction and to twenty-five years at hard labor for the indecent behavior conviction. The trial court ordered that the sentences be served concurrently and without the benefit of parole, probation, or suspension of sentence. Additionally, the trial court ordered that, in the event defendant should be released from prison, he was to register as a sex offender for life.

In sentencing defendant, the trial judge stated:

> [T]he victim testified that the sexual abuse began at the age of nine and occurred for a couple of years. The Court will note that you gave her the option of raping her or sticking your fingers in her vagina. The Court will note that when you did so on multiple occasions you caused physical pain; you also caused her emotional pain. And if that were not severe enough, you caused her spiritual pain and asked her to pray with you actually after you sexually abused her. You then threatened her that if she told anybody you would harm her.
> This abuse went on until she was 11 years old and only stopped when she was caught by her mother with you texting her asking her to send nude photographs of her. You also tried to force her to touch your penis while you stood in front of her naked.
>
> This Court also heard evidence that another young child in middle school was not given that choice and that you raped her while she was in middle school over a couple of years.
>
> This Court finds you a sexual predator, and the worst of the worst[.]

Also on August 21, 2019, immediately following sentencing, defendant filed a motion to reconsider sentence on the basis that the sentences imposed, while within the statutory limits, were excessive and should be reconsidered because a "lower sentence is more in keeping with fairness and state and federal constitutional standards." The sole argument presented by the defense in support

of its motion was that the sentences were excessive because defendant had no prior convictions. In denying defendant's motion, the court responded:

> I find Mr. Melgar a sexual predator of juveniles. He has preyed on not one but two middle schoolgirls while over authority of them. This Court could have sentenced him to 99 years, and again, the Court finds him the worst of the worst, and your motion is denied.

Similarly, on appeal, defendant contends that, even though the sentences imposed are within statutory range, they are "constitutionally excessive" when applied to him because he has no prior convictions. Specifically, defendant argues that the sentence imposed for his sexual battery conviction is "on the higher end of the sentencing range," and the sentence for his indecent behavior conviction is the maximum allowed by law. Given that he is only thirty-eight years old, defendant maintains that he has, in effect, been given a life sentence.

The only ground raised in defendant's motion to reconsider sentence was constitutional excessiveness. Where a defendant's motion to reconsider sentence alleges mere excessiveness, the reviewing court is limited to a review of whether the sentence is constitutionally excessive. La. C.Cr.P. art. 881.1;[2] *State v. Harris*, 17-303 (La. App. 5 Cir. 12/20/17), 235 So.3d 1354, 1376, *writ denied*, 18-160 (La. 6/15/18), 257 So.3d 675. Accordingly, our review of defendant's sentences herein is limited to a review for constitutional excessiveness. *Id.*

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *State v. Wilmot*, 13-994 (La. App. 5 Cir. 5/14/14), 142 So.3d 141,

---

[2]    La. C.Cr.P. art. 881.1(E) provides that the "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review."

148; *State v. Horne*, 11-204 (La. App. 5 Cir. 2/14/12), 88 So.3d 562, 569, *writ denied*, 12-556 (La. 6/1/12), 90 So.3d 437.

Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. *Wilmot*, 142 So.3d at 149; *State v. Ross*, 13-924 (La. App. 5 Cir. 5/28/14), 142 So.3d 327, 333. This Court, however, has recognized that a maximum or near maximum sentence for sexual battery of a minor may not be excessive if a defendant exploits a position of trust to commit the crime. *Wilmot*, 142 So.3d at 149 (*citing State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, *writ denied*, 01-2965 (La. 10/14/02), 827 So.2d 414). Our brethren circuits have held that maximum, or near maximum sentences are reserved for crimes where the nature of the crime is one of long-term or repeated sexual abuse of the victim. *State v. Aguliar-Benitez*, 17-361 (La. App. 5 Cir. 12/10/18), 260 So.3d 1247, 1265, *writ denied*, 19-147 (La. 6/3/19), 272 So.3d 543. Although a sentence may fall within the statutory limits, it may nonetheless be excessive. *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979).

A trial court is given wide discretion in determining a sentence, and an appellate court will not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. An appellate court cannot set aside a sentence as excessive absent a manifest abuse of discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7, 16-17. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Id.* at 17.

In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing

the sentence. *State v. Lobato*, 603 So.2d 739, 751 (La. 1992); *State v. Howard*, 18-159 (La. App. 5 Cir. 11/17/18), 259 So.3d 583, 590, *writ denied*, 18-2034 (La. 4/29/19), 268 So.3d 1031; *State v. Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879. In reviewing a trial court's sentencing discretion, an appellate court considers three factors: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentences imposed for similar crimes by the same and other courts. *State v. Horne*, 88 So.3d at 569; *State v. Le*, 98-1274 (La. App. 5 Cir. 6/30/99), 738 So.2d 168, 171, *writ denied*, 00-2174 (La. 4/12/01), 789 So.2d 587. However, there is no requirement that specific matters be given any particular weight at sentencing. *Howard*, 259 So.3d at 590; *State v. Tracy*, 02-227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, *writ denied*, 02-2900 (La. 4/4/03), 840 So.2d 1213.

### *Nature of the Crime*

As previously noted, this Court has held that a maximum, or nearly maximum sentence for sexual battery or indecent behavior with a juvenile may not be excessive if a defendant exploits a position of trust to commit the crime. *State v. Dixon*, 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, 837, *writ not considered*, 18-1909 (La. 2/18/19), 263 So.3d 1154, *reconsideration granted*, 18-1909 (La. 4/8/19), 267 So.3d 606, *writ denied*, 18-1909 (La. 4/8/19), 267 So.3d 606; *Wilmot*, 142 So.3d at 149. Here, the evidence presented at trial established a relationship of trust between defendant and G.E. In particular, defendant was G.E.'s stepfather and the biological father of her two younger half-sisters. Additionally, G.E. considered G.E. to be a father figure as evidenced by her calling him "Poppi" or "Daddy."

The evidence further established that defendant continuously abused G.E. over a period of two years, beginning when she was nine years old and ending when she was eleven. During this two-year period, G.E. was subjected to repeated

threats of physical violence by defendant if she revealed his abuse. Moreover, because of the abuse, G.E. refused to visit her biological father in New York for fear that she would be taken away from her mother. The evidence showed that on at least one occasion defendant committed sexual acts upon G.E. when her two younger sisters were also present in the home. Additionally, G.E. described an incident where defendant sexually abused her while they were in the back seat of a parked vehicle in the McDonald's parking lot. On that occasion—and on others—defendant attempted to "put his private part inside [her] private part." Based upon the evidence and testimony presented at trial, the court found defendant to be "the worst of the worst." We agree.

### *Nature and Background of the Offender*

Defendant has no prior criminal convictions. Nonetheless, when sentencing, the trial court is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence of prior arrest records and of uncharged offenses or offenses that were *nolle prossed*. *State v. Mason*, 10-284 (La. App. 5 Cir. 1/11/11), 59 So.3d 419, 429, *writ denied*, 11-306 (La. 6/24/11), 64 So.3d 216. In this regard, the trial court heard testimony from J.C., who testified that she, too, was repeatedly sexually abused and was raped by defendant when she was in elementary school and defendant was dating her mother. Like G.E., defendant's sexual abuse of J.C. spanned over a period of several years. Based upon defendant's aberrant actions involving G.E. and J.C., the trial court found him to be a "sexual predator of juveniles" who preyed on elementary-aged girls. The record testimony establishes defendant's propensity to exploit his position of trust in order to sexually victimize young girls.

*Sentences Imposed for Similar Crimes*

Decisions rendered by this Court and the jurisprudence of other Louisiana courts indicate that similar sentences have been imposed for similar crimes and have been upheld as constitutional.

**1. Sexual Battery of a Juvenile Under the Age of Thirteen**

In *State v. Wilmot*, *supra*, the defendant was convicted of sexual battery of a child under the age of thirteen and received a maximum ninety-nine year sentence.[3] The evidence at trial established that the defendant's crime was particularly heinous as the sexual abuse of the victim by the mother's live-in boyfriend began when she was six-years old and continued over a period of six years. The victim displayed a clear trust for the defendant, whom she referred to as "daddy." According to the victim, the pattern of abuse began with touching and oral sex performed by the defendant, and as the victim got older, the abuse escalated to the point where the defendant engaged in two instances of vaginal sex and one instance of anal sex. The defendant also forced the victim to perform oral sex on him. On appeal, we found the defendant's sentence—despite it being the defendant's first conviction—was not an abuse of discretion, because the abuse lasted years, the victim looked up to the defendant as a father figure, and the actions of the defendant fractured the victim's family life. *Wilmot*, 142 So.3d at 149.

Similarly, in *State v. Dixon*, 19-7 (La. App. 5 Cir. 12/30/19), 2019 WL 7288523, -- So.3d -- (unpublished opinion), on appeal following remand for re-sentencing, this Court affirmed the eighty-year sentences imposed upon the defendant, a first-time felony offender, for his convictions on two counts of sexual battery on a juvenile under the age of thirteen, as well as the eighty-year sentence

---

[3] The defendant also received a consecutive mandatory life sentence at hard labor for aggravated rape without the benefit of parole, probation, or suspension of sentence. *Wilmot*, 142 So.3d at 148.

imposed on the defendant for his conviction on one count of production of pornography involving a juvenile under thirteen.[4] At trial, the evidence revealed that while babysitting, the defendant digitally penetrated his two-year-old sister and ejaculated onto her vagina in connection with the production of child pornography. During the resentencing hearing following remand, the trial court primarily focused on the defendant's exploitation of the position of authority entrusted to him when he committed these acts of sexual battery on his young sister and used her to create child pornography. *Dixon*, 2019 WL 7288523, at 5. The defendant was supposed to be babysitting while his mother was at work earning a living for the family. *Id.* The trial court further noted the defendant's failure to recognize and acknowledge the harm he had perpetrated on his sister and family. Recognizing that maximum or near maximum sentences may be warranted in sexual battery cases where a defendant exploits his position of trust, and finding that the crimes committed by the defendant represented such a betrayal of the trust and authority placed in him to care for the victim, we found that the eighty-year sentences imposed by the trial court on resentencing were not unconstitutionally excessive and did not constitute a manifest abuse of the trial court's discretion. *Id.* at 6.

---

[4]     Following the defendant's conviction of production of child pornography involving a juvenile under the age of thirteen (count one) and two counts of sexual battery on a juvenile under the age of thirteen (counts two and three), the trial court originally sentenced the defendant to twenty years imprisonment at hard labor on count one and to ninety-nine years imprisonment at hard labor on each of counts two and three, all three sentences to run concurrently and without benefit of parole, probation, or suspension of sentence. On appeal, finding that the defendant's ninety-nine-year sentences imposed for his two convictions of sexual battery were unconstitutionally excessive, this Court vacated the defendant's sentences on counts two and three and, pursuant to La. C.Cr.P. art. 881.4, suggested sentences of thirty-five to forty years imprisonment at hard labor to run concurrently with count one would be constitutionally reasonable. Further, finding the sentence imposed on defendant for his conviction on count one to be illegally lenient, this Court vacated the sentence and, pursuant to La. C.Cr.P. art. 881.4, recommended a sentence of thirty-five to forty years imprisonment at hard labor to run concurrently with the other two counts. The matter was remanded to the trial court for resentencing on all three counts. *See State v. Dixon*, 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, 841. On remand, the trial court resentenced the defendant to imprisonment at hard labor for eighty years each on counts one, two, and three to run concurrently, without benefit of parole, probation, or suspension of sentence.

In *State v. Howard*, *supra*, this Court affirmed the sentences imposed upon the defendant who was convicted of one count of sexual battery on a juvenile under the age of thirteen, and one count of indecent behavior involving a second juvenile under the age of thirteen. As to the sexual battery conviction, the defendant was sentenced to forty years at hard labor, and as to the indecent behavior conviction, the defendant was sentenced to twenty years at hard labor. The sentences were ordered to run consecutively and without the benefit of parole, probation, or suspension of sentence. The evidence showed that both juvenile victims were the children of women the defendant had met on an on-line dating website and briefly dated, and that both of the girls were sexually abused by the defendant on a single occasion involving separate, unrelated incidents. In one instance, the defendant used his "160-pound frame to pin down and trap" an eleven-year-old victim while he "groped her and attempted to insert an object into her underwear." On another occasion, the defendant forcibly stripped a seven-year-old girl who was "made to endure his fondling of her." Additionally, evidence was introduced establishing that the defendant had a pending charge in Mississippi of sexual battery/forcible rape of his sixteen-year-old niece. In imposing the sentences, the trial court noted his concern that the defendant would re-offend if he were not placed in a custodial environment. *Id.*, 259 So.3d ta 591. Finding no abuse of the trial court's discretion and determining that the sentences imposed were not unconstitutionally excessive, including the consecutive nature of the sentences, as they did not "constitute a needless infliction of pain and suffering" nor "shock this Court's sense of justice," we noted that the defendant, "as a friend, boyfriend, or acquaintance of the victims' mothers, briefly had a position as trusted authority figure in the homes, which he exploited to commit his crimes." *Id.*, 259 So.3d at 592-593.

In *State v. Farrier*, 14-623 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233, the defendant was convicted of sexual battery on a six-year-old, unrelated child, who resided with him in the same house. At trial, it was established that the defendant touched the young girl's vaginal area, watched "nasty videos" with her, and imitated what was seen in those videos with the victim "in various states of undress." *Id*. at 1238. The evidence further showed that the abuse occurred on a daily basis whenever the defendant and the victim were alone in the home. *Id*. The defendant, a first-time offender, was sentenced to seventy-five years imprisonment for his sexual battery conviction, twenty-five years of which were ordered to be served without the benefit of parole, probation, or suspension of sentenced. The defendant was also ordered to register as a sex offender upon his release. *Id.* at 1239. The defendant's conviction and sentence were affirmed on appeal. *Id.* at 1247.

Similarly, in *State v. Odis*, 14-534 (La. App. 1 Cir. 11/7/14), 2014 WL 5801507 (unpublished opinion), *writ denied*, 14-2524 (La. 9/18/15), 182 So.3d 21, the defendant was convicted of sexual battery upon a juvenile and sentenced to seventy-five years imprisonment at hard labor, with the first twenty-five years ordered to be served without the benefit of parole, probation, or suspension of sentence. The trial evidence showed that the defendant, the live-in boyfriend of the victim's mother, began sexually abusing the victim when she was twelve-years old and that the defendant continued to "touch her inappropriately for [a period of] one-and-one-half years." *Id*. at 1-2. The victim testified that she would do everything he asked because she "was nervous and scared." *Id*. at 3.

In *State v. D.D.*, 18-891 (La. App. 4 Cir. 12/27/19), 288 So.3d 808, the defendant began sexually abusing the victim, his daughter, when she was eight-years old and in the fourth grade. The evidence at trial established that the defendant would rape the victim on Mondays while her mother was at work, and

that the abuse continued for a period of four years. The defendant was convicted of one count of sexual battery of a juvenile under thirteen years of age and sentenced to fifty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.[5] His conviction and sentence were affirmed on appeal. *Id.* at 856.

In the case *sub judice*, defendant was G.E.'s stepfather and the father to her two half-sisters. G.E. considered defendant to be a father figure and referred to him as "Poppi" or "Daddy." Similar to our findings in *Wilmot*, *Dixon*, and *Howard*, we find that defendant exploited his position of authority over G.E. in order to commit the acts of sexual battery upon her, and that his actions have fractured G.E.'s family unit. Further, as in *Wilmot*, *Farrier*, *Odis*, and *D.D.*, the defendant's sexual abuse of G.E. occurred over an extended period of time. We find that these cases support the seventy-year sentence imposed upon defendant for his conviction of sexual battery and, consequently, find no abuse of the trial court's vast sentencing discretion.

### 2. Indecent Behavior of a Juvenile Under the Age of Thirteen

In *State v. Howard*, *supra*, this Court affirmed the twenty-year sentence imposed upon the defendant for his conviction of indecent behavior of a juvenile under the age of thirteen. Though the case involved a single incident of indecent sexual behavior with the victim, we found no abuse of the trial court's sentencing discretion based upon our finding that the defendant exploited his position of authority over the victim to commit the abuse. *Howard*, 259 So.3d at 592-593.

Similarly, in *State v. Badeaux*, *supra*, the defendant, forty-nine years old and a first-felony offender, was convicted of sexual battery and indecent behavior with

---

[5] The defendant was also convicted of two counts of first degree rape for which he was sentenced to life imprisonment at hard labor without benefits on each count, and one count of attempted first degree rape for which he was sentenced to fifty years imprisonment at hard labor without benefits. These sentences, in addition to the sentence imposed upon the defendant on his sexual battery conviction, were all affirmed on appeal. *D.D.*, 288 So.3d at 856.

a juvenile. The defendant received the maximum sentences allowed by law in effect at the time of the offenses on both convictions; the sentences were ordered to run consecutively. On a single occasion, the defendant lured the eight-year-old victim into his home by giving her candy. He then stripped down to his "ripped" underwear exposing his penis, showed her photographs and magazines of naked men and women, and digitally penetrated the victim's vagina. *Badeaux*, 798 So.2d at 237. The defendant had previously been accused of molestation charges involving his former stepdaughters. *Id*. at 239. In affirming the maximum sentences imposed, this Court found that the defendant had established a relationship of trust with the victim by giving her candy, then abused that relationship by molesting a vulnerable girl. *Id*. at 240.

In *State v. Modisette*, 50,846 (La. App. 2 Cir. 9/28/16), 207 So.3d 1108, the defendant, sixty-eight-years old and a first-felony offender, was convicted on a guilty plea of indecent behavior of a juvenile and sentenced to twenty-five year's imprisonment without the benefit of parole, probation, or suspension of sentence.[6] *Id*. at 1101. In the bill of information, the state alleged that the defendant committed acts of indecent behavior upon different minor victims under the age of thirteen, and that the defendant committed the molestations by virtue of his position of control or supervision over the victims. *Id*. at 1109. In sentencing the defendant, the trial court found that the defendant's conduct was likely to continue to occur if given a probated or lesser sentence, stating that "a lesser sentence would deprecate the seriousness of the offense." *Id*. Based upon the defendant's

---

[6] The defendant also pled guilty to three additional counts of indecent behavior and two counts of molestation of a juvenile occurring between the years of 1995 and 1997. As to these convictions, the defendant was sentenced to twenty-five years imprisonment on each count, to be served concurrently, and without the benefit of parole, probation, or suspension of sentence. *Modisette*, 207 So.3d at 1110. On appeal, the court determined that because the maximum sentence allowed under the law at the time these crimes were committed was not more than seven years, with or without hard labor, for the indecent behavior conviction, and for not more than fifteen years for the crime of molestation of a juvenile over which the offender has control or supervision, the twenty-five year sentences imposed by the trial court on each count were illegally harsh. Accordingly, the court vacated the sentences as to these convictions and remanded the matter for resentencing. *Id*. at 1112.

propensity to commit sexual offenses against juveniles and the benefit he received by pleading guilty, the appellate court found that the imposition of the maximum sentence was not unconstitutionally excessive as it did not shock the sense of justice and was not an abuse of discretion. *Id.* at 1111.

In *State v. Kirsch*, 02-993 (La. App. 1 Cir. 12/20/02). 836 So.2d 390, *writ denied*, 03-238 (La. 9/5/03), 852 So.2d 1024, the imposition of a near maximum sentence for the conviction of indecent behavior with a juvenile was upheld on appeal. There, the defendant, a neighbor and close family friend, exposed the eight-year-old victim to sexually explicit materials, touched her vaginal area through her clothing, forced her to fondle his genitals, and then removed her clothes and viewed her "private parts." *Id.* at 396. Though the defendant had no prior criminal history, the court considered that the defendant had established a relationship of trust with the victim and her family, and then abused that relationship. *Id.* The court found that the sentence imposed was not so grossly disproportionate to the crime committed as to shock its sense of justice.

In *State v. Penn*, 633 So.2d 337 (La. App. 1 Cir. 11/24/93), the court on appeal held the maximum terms of imprisonment for indecent behavior with a juvenile were not excessive. At the time of the offense, the defendant was forty-years old and was a teacher at the twelve-year-old victim's school. Over a period of eight months, the defendant daily abused the victim, including teaching the victim to masturbate, kissing the victim, fondling the victim's breasts, and oral sex. The court observed that the circumstances of the case distinguished it from the typical case of indecent behavior with a juvenile, since the defendant violated his position of trust as a teacher, and exploited that position to take advantage of the victim. *Id.* at 339-340. Additionally, the sentence imposed was supported by the defendant's repeated deviant acts over "many months." *Id.*

Lastly, in *State v. Armstrong*, 29,942 (La. App. 2 Cir. 10/29/97), 701 So.2d 1350, a maximum sentence for the conviction of indecent behavior with a juvenile was upheld on appeal where a step-grandfather fondled the breasts and vaginal area of the nine-year-old victim on two separate occasions as she visited in his home. According to a presentence investigation report, the defendant's daughter and step-daughter accused him of molesting "his daughter as a child and his nieces and granddaughters for years." *Id*. at 1351. In upholding the maximum sentence as not unconstitutionally excessive, and finding no abuse of the trial court's discretion, the appellate court noted that the defendant "abused a position of trust and responsibility for his own perverted sexual interests without regard to the lifelong harm he could cause the victim." *Id*.

In the instant case, as in *Howard*, *Badeaux*, *Kirsch*, *Penn*, and *Armstrong*, defendant exploited a position of trust. He was G.E.'s stepfather. Further, as in *Penn*, defendant's abuse of G.E. was not an isolated incident, but rather, occurred over the course of two years. These factors support defendant's maximum sentence for indecent behavior with a juvenile under the age of thirteen. Further, the trial court here, similar to the courts in *Modisette* and *Armstrong*, noted that defendant was a "sexual predator of juveniles," and as in *Howard*, expressed its concern that defendant would re-offend if he were not placed in a custodial environment. We agree. In *Modisette*, *Armstrong*, and *Howard*, the appellate courts upheld the imposition of the maximum or near maximum sentences.

Considering the nature of the crimes, the nature and background of defendant, and the sentences imposed for similar crimes, we find the record supports both the seventy-year sentence without benefits imposed on defendant for his conviction of sexual battery on a juvenile under the age of thirteen, and the maximum sentence of twenty-five years without benefits imposed on defendant for his conviction of indecent behavior with a juvenile under the age of thirteen.

Accordingly, we conclude the trial court did not abuse its vast discretion in imposing the sentences in this case as they are not grossly disproportionate to the severity of the crimes defendant committed, and are not unconstitutionally excessive and do not shock this Court's sense of justice.

**Errors Patent Discussion**

As is our routine practice, we have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). We note that the trial court did not observe the twenty-four hour delay between the denial of defendant's motion for new trial and sentencing as required by La. C.Cr.P. art. 873. However, we find defendant waived the sentencing delay. This Court has previously held that tacitly waiving the delays can eliminate the necessity of corrective action. Specifically, we have found the statement, "Ready for sentencing, your honor" sufficient to constitute an implied waiver. *State v. LaGarde*, 07-288 (La. App. 5 Cir. 10/30/07), 970 So.2d 1111, 1126; *State v. Ferrell*, 94-702 (La. App. 5 Cir. 5/30/07), 656 So.2d 739, 745, *writ denied*, 95-2360 (La. 4/18/97), 692 So.2d 433.

Here, immediately after lodging his objection to the denial of defendant's motion for new trial, defense counsel stated, "Ready for sentencing, Your Honor." Accordingly, based on defense counsel's affirmative statement indicating that defendant was ready for sentencing, we find defendant waived the requisite sentencing delay; no corrective action is necessary.

We also note that a discrepancy exists as to the concurrent nature of the sentences. The minute entry states that the sentence on count one and the sentence on count two were to be served concurrently. Further, the transcript reflects that the trial court ordered that the sentences "run concurrently with one another." The uniform commitment order ("UCO"), however, does not indicate the sentences are to run concurrently. Where there is a conflict between the commitment order and

the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). Accordingly, we remand the matter for correction of the uniform commitment order to reflect the concurrent nature of defendant's sentences and direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598, 609, *writ denied*, 18-196 (La. 11/5/18), 255 So.3d 1052, *cert. denied*, -- U.S. --, 139 S.Ct. 2676, 204 L.Ed.2d 1079 (2019).

### DECREE

For the foregoing reasons, this Court affirms defendant's sentences for sexual battery of a child under the age of thirteen and indecent behavior with a child under thirteen. Further, we remand for correction of the UCO as set forth above.

**SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF THE UNIFORM COMMITMENT ORDER**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 30, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

**19-KA-540**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. SCOTT U. SCHLEGEL (DISTRICT JUDGE)
GAIL D. SCHLOSSER (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          LIEU T. VO CLARK (APPELLANT)

**MAILED**
LYNN SCHIFFMAN (ATTORNEY)
ZACHARY P. POPOVICH (ATTORNEY)
HONORABLE PAUL D. CONNICK, JR.
(ATTORNEY)
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053