MOLAISON, J.
Defendant appeals his convictions and sentences for indecent behavior with a juvenile and sexual battery upon a known juvenile. For the reasons that follow, we affirm defendant's convictions and sentences, and we remand for the correction of an error patent on the face of the record.
PROCEDURAL HISTORY
On May 23, 2016, the Jefferson Parish District Attorney's Office charged defendant, Billy Joe Howard, in Count 1, with indecent behavior with a juvenile, in violation of La. R.S. 14:81 and, in Count 2, with sexual battery upon a known juvenile, a violation of La. R.S. 14:43.1. Defendant, in absentia , pled not guilty to both counts through counsel at his arraignment on May 24, 2016. Defendant proceeded to a jury trial on October 3, 2017, at the conclusion of which he was found guilty as charged on both counts. Defendant's motion for new trial, filed October 12, 2017, was denied on that same date. Also, on October 12, 2017, the trial court sentenced defendant to 20 years at hard labor for his conviction on Count 1, and further sentenced him to 40 years at hard labor for his conviction on Count 2. The sentences were ordered to run consecutively and without the benefit of parole, probation or suspension of sentence. Defendant's motion to reconsider sentence was denied. Defendant thereafter filed a timely motion for appeal, which was granted.
FACTS
Count 1: Indecent Behavior With A Juvenile
M.C., the mother of the victim who is the subject of Count 1, M.B.,[1] testified that in July of 2015, she lived on the West Bank of Jefferson Parish. During that month she made contact with defendant[2] on a dating website, and he stayed at her home *586 for a few days with her, her two daughters and son. On July 14, 2014, M.B. called M.C. at work and told her that defendant made her feel "uncomfortable." Based on that information, M.C. packed defendant's belongings and asked him to leave her home the following morning, on July 15, 2014, before she went to work. That afternoon, upon returning from work, M.C. was advised by M.B.'s counselor[3] that defendant had sexually assaulted M.B., at which time she called the police to make a report. M.C. spoke with three detectives who responded to the call. Later, M.C. brought M.B. and her son to give an interview at the Jefferson Children's Advocacy Center, and she also brought M.B. to get a medical exam.
Deputy Alvin Farris, of the Jefferson Parish Sheriff's Office, testified that he responded to a call of inappropriate behavior with a juvenile, M.B., on July 15, 2015. During his interview with M.B., she told Deputy Farris that she was "laying on her back on the sofa" watching T.V. when defendant, an acquaintance of her mother, "got on top of her and started rubbing on her legs and on her hips". Defendant then put his hands under M.B.'s shirt and began to rub her back before attempting to "put an unknown object in her pants." M.B.'s brother was present while the incident occurred. Defendant jumped off of M.B. when she told defendant that she needed to stretch, and M.B. went into the bathroom and locked the door until her mother's friend came to babysit. Deputy Farris testified that after he interviewed M.B. and her family, he contacted the Detective Bureau in order to have a detective assigned to the case.
Detective Judd Harris, assigned to the Jefferson Parish Sheriff's Office Personal Violence Section, testified that he investigated an allegation of child sexual abuse on July 15, 2015. In his interview with M.B., she recounted to him that, after her mother had left for work, defendant "began to tickle her, and then pinned her onto the couch putting all his weight on her to where she couldn't move." Defendant then placed his hands underneath M.B.'s shirt, rubbing her back, before trying to remove her pajama bottoms. M.B. told Detective Harris that defendant let her up after she told him that she needed to use the restroom. Detective Harris stated that he did not interview M.B.'s younger sister, as he felt that she was "too young to get a statement from." Although Detective Harris did not interview M.B.'s younger brother at that time, he did set up a forensic interview for M.B.'s brother at a later date. M.B.'s mother provided Detective Harris with a copy of defendant's profile from the online dating website, as well as the make of defendant's vehicle and a partial license plate number. Using that information, Detective Harris was able to obtain defendant's full name. The day after Detective Harris went to M.B.'s forensic interview at the Jefferson Children's Advocacy Center on July 27, 2015, he issued a warrant for defendant's arrest on the charge of indecent behavior with a juvenile. Defendant was eventually arrested on October 29, 2015, in Mississippi.
Forensic nurse practitioner, Anne Troy, was accepted, by stipulation of defendant, as an expert in the field of forensic pediatrics and child abuse. Troy testified that she evaluated M.B. at the Audrey Hepburn Care Center on August 5, 2015 and *587 December 14, 2015. An audio recording of her interview with M.B. was played for the jury, and diagrams that showed where M.B. indicated defendant had touched her body were also introduced into evidence. Troy stated that, based upon the history that M.B. had provided to her, she diagnosed child sexual abuse.
Brittany Bergeron testified that she was employed as the forensic interviewer at the Jefferson Children's Advocacy Center, and conducted an interview with M.B. on July 27, 2015. She also interviewed M.B.'s brother, J.B., on that date. Audio and video of the interview with M.B. were played for the jury.
M.B.'s brother, J.B., was 11 years old at the time of trial. He testified that he knew defendant, his mother's friend, for a short time when he was nine years old. J.B. recalled a time when he saw M.B. reclining on the couch and defendant "laying right in front of her" facing M.B. Defendant lifted up M.B.'s shirt and appeared to be scratching her back. J.B. testified that he did not think, at that time, that anything "wrong" was happening. At some point, M.B. was no longer on the couch, and he later saw M.B. in her room.
The victim, M.B., was 13 years old at the time of trial. She testified that when she was 11, she met defendant after her mother began dating him. On one occasion, defendant was with M.B. and her siblings while her mother was at work. At that time, M.B. was on the couch in her living room watching T.V. after taking a shower. Her brother was on the floor and her younger sister was on an adjoining couch. Defendant was sitting on the couch by M.B. and began to move closer toward her. Defendant began "hugging" M.B. and rubbing her back while she was "kind of laying down". At first he touched outside of M.B.'s shirt, but then he "went in" her shirt. Defendant asked M.B. if it felt good. Defendant kept sliding his hand up M.B.'s back and then he grabbed her leg and positioned it over his waist while he kept "moving into different positions." Defendant got up and "pulled something out of his pants," which he then put into her underwear and tried to move near M.B.'s vagina after he got back on top of her. While M.B. never saw the object, she described it as "round and a little cold or wet." M.B. told defendant that she needed a drink of water, at which time she got up from the couch then went from the kitchen, to the bathroom, to her mother's room. She called her mother after defendant left to tell her that the defendant made her uncomfortable, but she did not tell her mother that night the details of what had happened. The next day, M.B. told her counselor and police about the incident.
On cross-examination, M.B. stated that her mother's friend, Jennifer, was at her home in her mother's room on the day of the incident.
Count 2: Sexual Battery
With respect to Count 2, D.B., the mother of the victim, L.B.,[4] testified that from July of 2015 through December of 2015, she lived on the West Bank of Jefferson Parish. Near the end of July in 2015, D.B. met defendant on a dating website and began a relationship with him.[5] Defendant first met D.B.'s children weeks later, at the beginning of August. On one occasion in August, after school had started, defendant agreed to take D.B.'s two older children *588 to the bus stop. D.B. recalled that defendant told her that day that L.B. had kissed him goodbye at the bus stop. When D.B. asked L.B. about it, L.B. became embarrassed.
In October of 2015, defendant called D.B. as he was being arrested. D.B. asked a friend in law enforcement to find out for her what defendant had been arrested for. At that time, D.B. did not know who M.C. and M.B. were. However, defendant had previously driven D.B. past M.C. and M.B.'s house and told D.B. "about how he was staying with this girl for like a week, and she lived right there." After his arrest, defendant claimed that M.C. had him arrested because he "owed her money." On the date of defendant's arrest, after learning about what the criminal allegations against defendant were, D.B. asked her two oldest children if defendant had ever touched them inappropriately, to which both replied "no." D.B. continued a relationship with defendant after his arrest.
In November of 2015, D.B. was notified by L.B.'s second grade teacher[6] about an incident at school during which L.B. had described sex and disclosed that her mother's boyfriend had taken her pants off. When D.B. questioned L.B. about what had happened, L.B. told her that on the day defendant took her and her brother to the bus stop, defendant brought L.B. into the bedroom,[7] "took her pants off and touched her and kissed her." D.B. called the police after the disclosure by L.B. Referring to old text messages between herself and defendant, D.B. was able to determine the time period when the abuse took place. L.B. spoke to police, gave a forensic interview, and underwent a medical evaluation. After L.B. had her forensic interview, D.B. eventually went and spoke to M.B.'s mother, M.C., to tell M.B. that defendant had sexually abused her daughter as well.
Officer Gwen Valence, of the Westwego Police Department, testified that she was dispatched to a complaint of sexual abuse on November 11, 2015. Officer Valence spoke with both L.B. and D.B. at that time, and concluded that inappropriate sexual conduct had occurred between defendant and L.B. at a prior undisclosed date. Following the interview, Officer Valence notified the Detective Bureau. Officer Valence's lieutenant also spoke with L.B., and he asked L.B. to indicate on a stuffed animal where defendant had touched her. At that time, L.B. demonstrated that defendant had touched her vaginal area. The investigation was taken over by Detective Lopez.
Detective Tyler Lopez testified that he was assigned to investigate the allegations of sexual abuse by L.B. on November 17, 2015. He initially spoke with D.B. about the case, but did not interview L.B. because of her young age. However, Detective Lopez attended L.B.'s interview at the Children's Advocacy Center.[8] Following L.B.'s interview at the Children's Advocacy Center, Detective Lopez authored a warrant for defendant's arrest for the charge of sexual battery of a victim under the age of 13. L.B. also had a "medical *589 interview" at the Audrey Hepburn Care Center, which Detective Lopez made part of his report.[9] Defendant was ultimately arrested in February of 2016. On March 29, 2017, L.B. underwent a second forensic interview.
The victim, L.B., who was nine years old at the time of trial, testified regarding defendant's sexual abuse of her. She stated that, one day, defendant was asked to take her and her brother to school in the morning. While her brother was downstairs, L.B. retrieved her clothes from the dryer and went to her room upstairs to put on her school uniform. She then returned downstairs to the laundry area. Meanwhile, defendant was in her mother's bed upstairs and he called to L.B. to come see him. L.B. retrieved her computer tablet from her mother's dresser and sat on the bed with defendant. At that time, defendant kissed L.B. on the mouth. L.B. recalled that defendant also touched her "front private" with his hand. Defendant told L.B. not to tell anyone about what happened.
Defendant took the stand to testify in his own defense. He acknowledged meeting M.C. and D.B. through the same dating website and described meeting their children. Defendant asserted that he had scratched M.B.'s back on one occasion, but he denied that anything inappropriate took place. He stated that M.C. told him to leave her house, but did not provide an explanation as to why. Defendant testified that he took D.B.'s children to school one day, and L.B. gave him a "peck on the cheek." Defendant testified that he turned himself in to the Jefferson Parish Sheriff's Office after he learned that there was a warrant out for his arrest for charges related to L.B. Defendant denied that the incident reported by L.B. took place.
On cross-examination, defendant stated that he did not recall being arrested for rape in Georgia on June 5, 1997. Defendant admitted that, after he made bond in L.B.'s case, an arrest warrant was issued for him in connection with an alleged sexual battery of his 16-year-old niece.
LAW AND ANALYSIS
In his sole assignment of error, defendant contends that his sentences are unconstitutionally excessive, consecutive and disproportionate to the offenses for which he was convicted. Conversely, the State argues that defendant's convictions and sentences resulted from acts committed against two underage victims on two separate dates, and therefore the trial court properly imposed consecutive sentences under La. C.Cr.P. art. 883. The State further argues that the sentences imposed by the trial court are within the statutory ranges of the respective statutes and are individualized to this particular defendant after taking victim impact statements into account.
The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Nguyen , 06-969 (La. App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied , 07-1161 (La. 12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. Id. According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In *590 reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. State v. Nguyen, 958 So.2d at 64 ; State v. Taylor , 06-839 (La. App. 5 Cir. 3/13/07), 956 So.2d 25, 27, writ denied , 06-0859 (La. 6/15/07), 958 So.2d 1179.
In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Allen , 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880. However, there is no requirement that specific matters be given any particular weight at sentencing. State v. Tracy , 02-0227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, writ denied , 02-2900 (La. 4/4/03), 840 So.2d 1213.
Count 1
Defendant was convicted of indecent behavior with a juvenile under the age of 13 years. The penalty for a conviction for this offense, pursuant to La. R.S. 14:81(H)(2), is imprisonment at hard labor for not less than two nor more than 25 years, with at least two years of the sentence to be imposed without the benefit of parole, probation, or suspension of sentence. The trial court sentenced defendant to 20 years at hard labor, without the benefit of parole, probation or suspension of sentence, which was less than the maximum he could have received.
Count 2
The penalty for a conviction for sexual battery on a juvenile under the age of 13 years, as provided for in La. R.S. 14:43.1(C)(2), is imprisonment at hard labor for not less than 25 years nor more than 99 years, with at least 25 years of the sentence imposed without the benefit of parole, probation, or suspension of sentence. The trial court sentenced defendant to 40 years at hard labor for this count, without the benefit of parole, probation or suspension of sentence, which was less than one-half of the maximum sentence he could have received.
At the sentencing hearing on October 12, 2017, trial judge gave the following reasons for the sentences imposed:
THE COURT:
The Court has taken into consideration the evidence and testimony, which the Court heard at trial, the entire record in this case. The Court has also reviewed and considered the sentencing guidelines provided to the Court by Louisiana Code of Criminal Procedure Article 894.1, including that there is an undue risk that the Defendant will commit another crime, that the offender knew or should have known that the victim of each of these crimes was particularly vulnerable due to their youth, that the seriousness of the crime and the effect these crimes has had on these two young juveniles and their families, including the multiple interviews, examinations, the trauma of having to testify at trial, having to undergo therapy, and the effects it may have on them and the rest of their families for their entire lives.
...
The Court orders, because we had two victims on two separate dates, that these sentences shall run consecutively with each other. The Court gives you credit for time served pursuant to Article 880 of the Code of Criminal Procedure.
*591 After defendant was sentenced, he objected and filed a motion to reconsider sentence, which was taken up by the trial court on that same date. In denying defendant's motion, the court stated, in relevant part:
THE COURT:
The Court outlined the reasons for the sentence of Mr. Howard, and the Court strongly believes that that sentence is appropriate considering what the Court also believes is a concern that Mr. Howard would re-offend if he were not in a custodial environment.
Consecutive Sentences[10]
At the outset, we find no merit in defendant's contention that the trial court erred in ordering his sentences to run consecutively. As recounted in the above stated facts, the offenses for which defendant was convicted were not based on the same act or transaction. Therefore, consecutive sentences were permissible under La. C.Cr.P. art. 883. Accordingly, we find no abuse of discretion in that regard.
The Egregiousness Of The Offenses
In claiming that his sentences are unconstitutionally excessive, defendant argues that "[W]hile [the] charges are serious and involve children, they were not committed in the most heinous or vicious way." Specifically, defendant points out that there were no weapons involved in either offense. To this, defendant adds his personal opinion that the victims of his crimes were not deeply affected by what happened to them:
The sentences are not commensurate with the offenses. Both of the girls went on with their days as if nothing had happened. Their mothers' insult pushed the matters forward. The investigation and trial seemed more traumatic to each of the girls than the actual incident.
In the instant case, the record shows that defendant used his adult 160-pound frame[11] to pin down and trap M.B., an 11-year-old victim, while he groped her and attempted to insert an object into her underwear. Similarly, the second victim, who was seven years old at the time of the offense, was forcibly stripped by the adult male assailant and made to endure his fondling of her. The fact that defendant could accomplish his crimes without the use of weapons does not void the fact that his ability to overpower his victims was made possible through his superior height, weight, and strength. In addition, defendant's assessment of the psychological trauma his crimes caused, and will continue to cause, is directly and emphatically contradicted by the victim impact statements in the record. The record also demonstrates that defendant has consistently denied any misconduct and showed no signs of remorse for his acts.
Further, defendant claims that his sentences are excessive in light of what he categorizes as "no record of violence presented," and "little criminal history." However, the trial court granted the State's motion to introduce La. C.E. art. 404B evidence that defendant had a pending charge of sexual battery/forcible rape of his niece in Hancock County, Mississippi, which allegedly occurred on July 13, 2016, *592 while he was out on bail for the instant offenses.[12] A trial judge is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence of prior arrest records and of uncharged offenses or offenses that were nolle prossed . State v. Mason , 10-284 (La. App. 5 Cir. 1/11/11), 59 So.3d 419, 429, writ denied , 11-306 (La. 6/24/11), 64 So.3d 216.
A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey , 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, writ denied , 08-1649 (La. 4/17/09), 6 So.3d 786. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. While defendant in the instant case received below the maximum sentences on both counts, the "jurisprudence indicates that maximum, or nearly maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile." State v. Badeaux , 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, 239, writ denied , 01-2965 (La. 10/14/02), 827 So.2d 414. In the instant case, defendant, as a friend, boyfriend, or acquaintance of the victims' mothers, briefly had a position as trusted authority figure in the homes, which he exploited to commit his crimes.
Finally, our survey of other jurisprudence establishes that similar sentences imposed for similar crimes have been upheld as constitutional by other courts.[13]
Considering the nature of the crimes, the nature and the background of defendant, and the sentences imposed for similar crimes, we find that the 20-year sentence without benefits in connection with defendant's conviction for indecent behavior with a juvenile under thirteen years of age, and the well-below maximum sentence of 40 years without benefits in connection with defendant's conviction for sexual battery of a juvenile under thirteen years of *593 age, are not unconstitutionally excessive, do not constitute a needless infliction of pain and suffering, and do not shock this Court's sense of justice.
This assignment is without merit.
ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). We note that the uniform commitment order (UCO) incorrectly reflects the offense dates for both counts.[14] Accordingly, we remand the matter for correction of the UCO to accurately reflect the date ranges of the respective offenses and direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. See, State v. Doucet , 17-200 (La. App. 5 Cir. 12/27/17), 237 So.3d 598.
DECREE
Accordingly, for the foregoing reasons, defendant's convictions and sentences are affirmed, and we remand for correction of the uniform commitment order.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER

La. R.S. 46:1844(W) prohibits the public disclosure of the names, addresses, or identities of crime victims under the age of eighteen (18) and of all victims of sex offenses, but instead authorizes the use of initials and abbreviations. Accordingly, in this case, the victim and her mother will be referred to by their initials.

M.C. identified defendant in open court.

Kristin Hintron, a social worker and family therapist employed by the Jefferson Parish Human Services Authority, testified that she conducted at-home counseling sessions with M.B. and her family. Hintron stated that in her session with M.B., which occurred on July 15, 2014, M.B. disclosed that something "sexual in nature" had occurred with defendant.

As previously indicated, the victim and her mother will be referred to by their initials to protect the identity of the victim, pursuant to La. R.S. 46:1844(W).

D.B. identified defendant in open court.

L.B.'s second grade teacher, Jamie Staes, testified that in November of 2015 she was informed by L.B.'s classmates that L.B. was telling students in the classroom about sex and said that she had a boyfriend "who takes off her clothes and that she takes off his clothes." When Staes asked L.B. about her statements, L.B. began to cry. Staes contacted D.B. to advise her about what L.B. had said at school, and she also advised the school social worker as well.

The record indicates that the abuse took place in D.B.'s bedroom.

A tape of that interview was played for the jury.

Dr. Jamie Jackson, a child abuse pediatrician who is employed by the Audrey Hepburn Care Center at Children's Hospital, who testified at trial, conducted an interview with L.B. and concluded that her account was consistent with sexual abuse.

While this Court has held that the issue of excessiveness of a consecutive sentence is not included in a bare constitutional review when the issue has not been raised in a motion to reconsider sentence, defendant here objected after sentencing regarding the consecutive nature of the sentences imposed, preserving this issue for appeal. See, State v. Christoff , 00-1823 (La. App. 5 Cir. 5/30/01), 788 So.2d 660.

Defendant's weight was obtained from a July 28, 2015 arrest warrant in the record.

It is also noted that, as stated by appellate counsel, 20 years earlier, as a juvenile, defendant had a prior conviction. Further, at trial, defendant was asked by the State whether he had been arrested for rape in Georgia in 1997, which defendant denied.

See , State v. Modisette , 50,847 (La. App. 2 Cir. 9/28/16), 207 So.3d 1108, (the defendant's 25-year sentence without benefit of parole, probation, or suspension of sentence for indecent behavior with juveniles was not excessive); State v. Sanders , 49,241 (La. App. 2 Cir. 10/22/14), 151 So.3d 160, writ denied , 14-2536 (La. 1/16/15), 157 So.3d 1133, (the defendant's 25-year sentence without benefit of parole, probation, or suspension of sentence for indecent behavior with juveniles was not excessive considering the psychological injury to the victim, the severity of the offense, and the young age of the victim, who was 12 years old at the time the incident occurred); State v. Lilly , 12-0008 (La. App. 1 Cir. 9/21/12), 111 So.3d 45, writ denied , 12-2277 (La. 5/31/13), 118 So.3d 386, (the defendant's 35-year sentence at hard labor without benefit of parole, after being convicted of sexual battery in violation of La. R.S. 14:43.1(C)(2), was not excessive in light of victim's testimony that, when she was four years old, the defendant touched her on her vagina while he was babysitting); State v. Greenberry , 14-335 (La. App. 4 Cir. 11/19/14), 154 So.3d 700, writ denied , 14-2656 (La. 10/9/15), 178 So.3d 1000, (the defendant's sentence of 45 years at hard labor, with the first 25 years to be served without benefit of parole was not excessive when the evidence showed that the defendant committed sexual battery of his live-in girlfriend's ten-year-old daughter by inserting his finger into the victim's vagina. See also , State v. Hubb , 97-304 (La. App. 5 Cir. 9/30/97), 700 So.2d 1103, and the cases cited therein.

The uniform commitment order reflects the offense dates as July 8, 2015. However, the record reflects that Count 1 occurred on or between July 8-15, 2015, and that Count 2 occurred on or between August 17-21, 2015.