# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

**24-595 consolidated with 24-596**

**STATE OF LOUISIANA**

**VERSUS**

**JACK RAY, SR.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 22-K-1372 C/W NO. 22-K-1457
HONORABLE GREGORY J. DOUCET, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**VAN H. KYZAR**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Ledricka J. Thierry, and Guy E. Bradberry, Judges.

**AFFIRMED AND REMANDED**
**WITH INSTRUCTIONS.**

Edward K. Bauman
Louisiana Appellate Project
P.O. Box 1641
Lake Charles, LA 70607
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Jack Ray, Sr.

Chad Pitre
District Attorney
Kathleen E. Ryan
Assistant District Attorney
Twenty-Seventh Judicial District
P. O. Drawer 1968
Opelousas, LA 70571
(337) 948-8984
COUNSEL FOR APPELLEE:
    State of Louisiana

**KYZAR, Judge.**

Defendant, Jack Ray, Sr., appeals his convictions of two counts of indecent behavior with a juvenile, two counts of molestation of a juvenile, and three counts of sexual battery of a juvenile, involving two victims. He asserts that all of his convictions are based on insufficient evidence. Alternatively, he asserts that his sentences are excessive. For the reasons herein, we affirm Defendant's convictions and sentences and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Defendant was arrested and charged pursuant to an amended bill of information in docket number 22-K-1372, with one count of indecent behavior with a juvenile, A.O.,[1] in violation of La.R.S. 14:81(A)(1), (H)(1); one count of indecent behavior with a juvenile under the age of thirteen, K.R., in violation of La.R.S. 14:81(A)(1), (H)(2); one count of molestation of a juvenile, A.O., in violation of La.R.S. 14:81.2(A)(1); one count of molestation of a juvenile under the age of thirteen, K.R., in violation of La.R.S. 14:81.2(A)(1), (C)(1), (D)(1); one count of sexual battery of a juvenile, A.O., in violation of La.R.S. 14:43.1(A), (C)(1); and two counts of sexual battery of a juvenile under the age of thirteen, K.R., in violation of La.R.S. 14:43.1(A), (C)(2). On June 24, 2024, Defendant, appearing in court with counsel, waived formal arraignment and reading of the amended bill of information and entered a plea of not guilty to all charges.[2] Trial by jury began on June 25, 2024. A summation of the testimony elicited during the trial follows.

---

[1] The initials of the minor victims are used to protect their identity as per La.R.S. 46:1844(W)(1)(b).

[2] Under docket number 22-K-1457, the trial court conducted a contradictory bail hearing for all the charges pending under docket number 22-K-1372. Bail was set on September 1, 2022, and a protective order was entered. It appears that no other activity was conducted therein.

Kaylan Rosette, a former investigator with the Department of Children and Family Services (DCFS), testified that DCFS received a report on July 19, 2022, regarding the sexual abuse of K.R., wherein the minor disclosed that Defendant touched her inappropriately multiple times when she was between the ages of eight and twelve. During a July 20, 2022 interview, K.R. reported that Defendant touched her breasts and vaginal area through her clothing on multiple occasions, which incidents occurred in his bedroom and in his vehicle while he was driving to the store or to medical appointments. K.R. stated that she would tell Defendant she needed to use the restroom to make him stop touching her. She further stated that she never told anyone about the abuse because she was scared and because Defendant told her not to tell anyone. K.R. stated that her friend, A.O., witnessed one of the incidents in Defendant's vehicle, and she attempted to stop him. She said that the last time Defendant touched her inappropriately was a week prior to the interview.

Ms. Rosette testified that she learned during the investigation that A.O. had also been a victim. She stated that she contacted Sergeant Toby Legrand, of the Arnaudville Police Department (APD), to assist in the investigation, because they worked jointly on such cases and because DCFS did not have arrest authority. She also arranged for K.R. and A.O. to be interviewed by Hearts of Hope (HOH), an advocacy center with trained professionals for victims of sexual assault and abuse.

Officer Legrand, a current employee of the Pointe Coupee Sheriff's Office, testified that he investigated the sexual-assault allegations involving K.R. while employed by APD. He stated that he was contacted by DCFS, after which he and

---

However, both matters were consolidated on motion of the State and without objection by Defendant on January 4, 2023.

2

Ms. Rosette interviewed K.R., who was accompanied by her father, on July 20, 2022. He said that K.R. provided much the same information that she had previously provided to Ms. Rosette, primarily that Defendant had touched her inappropriately on her breasts and vaginal area through her clothing. He described K.R.'s demeanor as distraught, scared, and crying. Officer Legrand identified a written statement obtained from K.R. during the interview, which included her date of birth in December 2009, thus making her under thirteen years of age at the time of the interview. K.R., in the statement, reported that she began living with Defendant and his wife after her mother died four years previously. She stated that Defendant started doing inappropriate things to her after she moved in, "like touching me in the breast and private parts." She stated that this happened both in the house and in his truck. She said:

> In the house I would go ask to use his phone to call my friends and . . . he would say "Yes" so I would get it and he would touch me in my private parts. Then in the car when I sat in the front he would try to touch me but I would say "Stop" also my friend was in there she would also say "stop" but she would sit in the back.

Officer Legrand testified that after interviewing K.R., he brought Defendant to the APD, where he advised him of his rights and attempted to interview him. He stated that when Defendant invoked his constitutional right to remain silent, he arrested him on charges of indecent behavior with a juvenile and sexual assault as he believed he had sufficient evidence to do so. He stated that he learned the next day, July 21, 2022, of additional sexual-assault allegations against Defendant involving A.O., which were being investigated by APD Officer Christian Deville. He also learned from Officer Deville that A.O. had witnessed Defendant sexually assaulting K.R.

3

Officer Legrand testified that he interviewed A.O. on July 22, 2022, regarding the allegations involving K.R. He stated that A.O. reported seeing several incidents of indecent behavior by Defendant towards K.R., mainly in Defendant's truck, a few of which she attempted to stop. She said that she saw Defendant touch K.R. on her breasts and her vaginal area, both through and inside of her clothing, and when she tried to make him stop, Defendant responded that nothing was happening but that they were not to tell anybody. She further reported that Defendant exposed his penis to her and K.R. on one occasion.

Officer Legrand identified A.O.'s written statement, obtained during the interview, which contains her date of birth in April 2008, making her fourteen years old at the time of the interview. In the statement, A.O. related that she had seen Defendant "put his finger in [K.R.] every time I would get in the truck and this started between April and May[.]" She said that she would tell Defendant "to stop and he wouldn't [stop] and would do it again[.]" She also indicated that she saw Defendant touch K.R.'s breasts and "bottom part" both through and inside her clothing, and that on one occasion, he exposed his penis to them. Officer Legrand testified that after interviewing A.O., he and Ms. Rosette arranged for her and K.R. to undergo forensic interviews by HOH, both of which he observed from a separate observation room.

Officer Deville testified that she investigated the allegations involving A.O. and assisted in the investigation involving K.R. As a patrol officer in a small town, she stated that she was familiar with Defendant's family and that she had frequently observed him driving his truck, while accompanied by K.R. and A.O. Officer Deville testified that she initially interviewed A.O. on July 21 or 22, 2022, at A.O.'s home, which was located two to three houses from Defendant's home. She stated that A.O.

4

lived with her father and stepmother, describing their relationship as that of a "close happy family." She summarized A.O.'s initial interview, as follows:

> [A.O.] claims that there were three separate incidents that had happened between her and [Defendant] in his vehicle as well as in the home of [Defendant]. Um, the first incident was not in chronological order um he had stuck his hands down her pants and touched her vaginal area as well as touched her breast. Um, the second time was he had tried to touch her breast, put his hands down her pants, touched her vaginal area um she asked him to stop he did not[,] he pulled his penis out and wiggled it at her[, and] when she asked him to stop he put it away[;] and the third incident was in the – [Defendant's] home um [K.R.], as well as [A.O.] were sleeping and [Defendant] had walked up to [A.O.] while she was sleeping and touched her in her vaginal area.

Officer Deville detailed the contents of a written statement she obtained from A.O. during the interview, wherein A.O. described three incidents involving Defendant. A.O. stated that she was out of school the first time Defendant touched her by putting his hand inside her pants and by touching her breasts. She said that the second time, which was similar to the first time, occurred in Defendant's truck. The third time occurred when A.O. was spending the night with K.R. at Defendant's house. A.O. stated that Defendant touched her on top of her pants and exposed his "private part," prompting her to tell him to put it back in his pants.

Officer Deville testified that she and Officer Legrand viewed A.O.'s HOH interview from a separate observation room. She described A.O.'s demeanor as "slightly nervous, but not really uncomfortable[,] she's very forthcoming and truthful." When asked if A.O. provided more details in the Hearts of Hope interview than she had in her initial interview, she replied, "Yes."

Kourtneii Henderson, a former forensic interviewer and victim's advocate and current regional care coordinator with HOH, conducted the August 1, 2022 forensic interviews of K.R. and A.O. She explained that HOH is a rape crisis and children's advocacy center that conducts forensic interviews on children who have potentially

suffered sexual or physical abuse or witnessed violent crimes. She stated that she conducted separate interviews of K.R. and A.O., and she verified each victim's audio/video recording, which was played for the jury.

The information provided by K.R. during the HOH interview was consistent with her previous statements regarding the multiple times, locations, and method Defendant used to inappropriately touch her. She stated that she also witnessed Defendant touch A.O. inappropriately and vice versa. She said that while Defendant mostly touched her through her clothing, he also tried to touch her underneath her clothing. K.R. further described an incident when she woke up to the sensation of something crawling on her chest. She stated that when she sat up, Defendant was on his knees next to her and had been touching her chest.

While A.O. reiterated the information provided in her earlier interviews, she was more forthcoming in the HOH interview regarding Defendant's actions. In summarizing the multiple instances, she stated that Defendant tried to touch her every time she was in his truck; that he made her and K.R. watch a "porn" video; that he twice took his private part out of his pants and wiggled it at her and told her that he wanted to stick it in her by two inches; that he once put his hand inside her pants and stuck his finger in her; that he put his hand inside her shirt and touched her "boobs"; and that he rubbed her legs. She said that every time he tried to touch her, she slapped his hand and told him to stop. Regarding the time that he penetrated her with his finger, A.O. stated that she was sitting in the middle of the truck's rear seat, looking out the window, when Defendant reached back with his right hand and stuck his index finger down her shorts and into the part of her body from which she "pees." She said that although she and K.R. both told Defendant to stop, he only

stopped when he pulled up to his house. A.O. also stated that she saw Defendant stick his finger in K.R.'s private part on multiple occasions.

Rebecca Havlik, a family nurse practitioner and Sexual Assault Nurse Examiner (SANE), performed a sexual assault examination on A.O. on August 9, 2022. She testified that the examination revealed normal physical findings and an intact hymen.[3] She explained that an intact hymen does not rule out the occurrence of a sexual assault, even with actual penetration:

> [T]he hymen is a very flexible tissue just like the tissue that's present in the genital and in [the] rectal area[,] it's mucosal, it's very much like the inside of your cheek so it heals very, very quickly often without any type of scarring. If it is damaged[,] there's a possibility it can heal. Usually in practice, we see about two to three days.

Nurse Practitioner Havlik went on to state that given the reporting delays common in child sexual-abuse cases, only about ten percent of the children examined exhibit definitive findings.

A.O., who was sixteen years old at the time of trial, testified that she was born in April 2008. She described K.R. as one of her best friends, and she stated that her day and overnight visits with K.R. took place at Defendant's home, which was located two doors down from her home. She testified that she was sexually abused by Defendant, with the incidents occurring in both his truck and his home. She stated that K.R. and her brother both slept on mattresses in Defendant's bedroom, and when she stayed the night with K.R., she slept on K.R.'s brother's mattress.

A.O. testified that Defendant first touched her in the summer of 2022, while driving her and K.R. to the store. She stated that they were in his truck, which had two front seats separated by a center console and a rear bench seat. She said that she

---

[3] Ms. Havlik explained that the hymen is mucosal "tissue that is present just inside of the vaginal . . . so before you enter the vagina."

and K.R. often rode with Defendant "for fun and sometimes to go to the store[.]" She stated that K.R. would sit in the front passenger seat, and she would sit in the middle of the rear seat. A.O. testified that Defendant, while driving, reached back and touched her through her clothing, starting at breast and then moving down to her private parts. She stated that she "freaked out. . . . Like I was froze [sic] and I didn't know what to do." She said that prior to this incident, she had observed Defendant touching K.R.'s breasts and putting his hand inside her pants. She stated, "I told him to stop, but he wouldn't." She said that every time Defendant sexually assaulted her in the truck, he also sexually assaulted K.R. A.O. stated that Defendant touched her on "[a] few[]" other occasions, and as time progressed, he began touching her inside of her clothing, until on at least two occasions, he penetrated her vaginally with his finger.

A.O. testified that once, at his home, Defendant exposed his penis to her and K.R., and he told A.O. that he wanted to penetrate her vaginally by at least two inches, although he did not follow through with this desire. She stated that he also showed her and K.R. a video of people having sex. A.O. then described an episode that occurred in April 2022, when she spent the night with K.R. She stated that she and K.R. had fallen asleep while watching television in Defendant's bedroom, and she later awoke with Defendant's hand inside her pants and his finger penetrating her vaginally. A.O. said that although she told Defendant to stop, he did not stop until he heard someone in the kitchen area of the house. She said that after that incident, she stopped staying overnight with K.R., although she continued visiting her during the daytime hours. When asked why she continued going to Defendant's house, until first reporting the incidents in July 2022, she stated:

8

Q.  Okay. During the incidents in the truck and before the incident in the bedroom why did you continue to go over to [Defendant's] house?

A.  To go check on my best friend.

Q.  Were you worried about her?

A.  Yes, ma'am.

Q.  Why?

A.  Because he would like just not stop touching her so I went [to] check on her.

Q.  [A.O.], did you eventually tell someone what [Defendant] did to you?

A.  Yes, ma'am.

Q.  And did you also say what he did to [K.R.]?

A.  Yes, ma'am.

Q.  Who did you tell that to first?

A.  Dad.

On cross-examination, A.O. admitted that she relayed different versions of the events from the first reporting through the HOH interview. However, she stated that she and K.R. had not talked or compared versions of the incidents and that no one had told her what to say. She said she was angry about what had happened to her. She also explained that there were times during her interviews when she was not comfortable talking with a male, as opposed to a female interviewer; thus, she did not disclose everything that had occurred. When questioned extensively as to how the truck incidents could have occurred while Defendant was driving, she maintained that Defendant touched both her and K.R. on the breasts and through and inside their pants. She maintained that he penetrated her vaginally with his finger and that he did the same to K.R.

9

K.R., who was fourteen years old at the time of trial, testified that she was born in December 2009, and that she was twelve years old when she first reported the allegations against Defendant in July 2022. She stated that when she was eight years old, she and her younger brother moved into the home of Defendant and his wife after their mother died and that their father and uncle also lived there. She said that she knew Defendant's date of birth to be November 25, 1950. K.R testified that when she moved in, she and her brother slept on mattresses in Defendant's and his wife's bedroom.

K.R. testified that she was eight years old when Defendant began touching her anytime they were alone together. She said that he would "touch me in places that he shouldn't be touching me." She stated that initially, he touched her through her clothing, on her breasts and buttocks, and he would also occasionally walk into the bathroom while she was bathing and stare at her, making her feel very uncomfortable. K.R. testified that this continued for about two years until she was ten years of age, after which he began putting his hand inside her clothing, touching her breasts and "private parts." When asked to describe the touching, she said, "It started off with rubbing and then it went further." She described the "further" as "[h]e would try to put his finger in me."

K.R. stated that she was eleven years old when Defendant started touching her in his truck. Her description of the truck's interior and hers and A.O.'s position in the truck echoed that given by A.O. K.R. testified that Defendant initially only touched her chest but that he began touching her on her private part through her clothing. She stated that some of these incidents occurred when A.O. was present, prompting A.O. to tell him to stop. She stated that A.O. "would tell him to stop[,] and I would tell him to stop." K.R. said that rather than stopping, "[Defendant] just

kept on either trying or he would go on to her." She stated that she witnessed Defendant touching A.O. in the truck and that both she and A.O. tried to make him stop.

K.R. testified regarding a time when Defendant's wife was in the hospital for extended periods, leaving her to sleep in the bedroom alone with Defendant. She testified that during this period, she sometimes slept in his bed. She stated that she would lie on the opposite side of the bed from Defendant and that he would pull her closer until they were lying side by side and begin touching her. She said that Defendant touched her private area through and inside her clothing and that he penetrated her vaginally with his finger more than once. K.R. described this as hurting her and being very uncomfortable. She stated that Defendant also grabbed her hand and put it on his private part but that she pulled her hand away. She also described one incident during this time when A.O. slept over, and she awoke to find Defendant penetrating her vaginally with his finger. She said that he only stopped because he heard someone in the house. She did not recall seeing Defendant do anything to A.O. after she awoke.

K.R. further stated that Defendant once showed her and A.O. a video of people having sex and that he tried to give her an inappropriate Christmas gift:

> [O]ne Christmas after we had all opened our presents[,] he had taken me into the bedroom and he was like I got a separate gift for you and he gave it to me and he was like open it and it was just like metal with like a pink button and um I said I didn't want it and he just got mad.

K.R. admitted that she told only parts of what happened to her during her interviews because she was not comfortable telling certain persons, especially men, what had actually happened. She described the experience of having to relate what happened multiple times to different people as "[v]ery embarrassing[]" and "scary."

11

Regarding the affect these incidents have had on her, she said, "it hurts me to know that my own family did that to me [], but I am glad that he is like removed so it doesn't happen[,] and I'm glad that my friend doesn't have to live through that anymore."

K.R. was cross-examined extensively about these incidents, particularly about how Defendant could commit these acts while driving and the vast difference between her trial testimony and her interview statements. Additionally, K.R. was asked repeatedly about why she continued riding in the truck with Defendant, with A.O. present as well. She testified, "Because I didn't want to make anybody upset[,]" particularly Defendant's wife. On redirect, K.R. testified that the incidents she described had occurred and that her testimony was not made up. The colloquy ended as follows:

> Q.    [K.R.], briefly, I know you've been up here a long time. Um, cut to the chase, did you make up this story about [Defendant] molesting you so you could go live with your other grandmother?
>
> A.    No, ma'am.
>
> Q.    Is living anywhere worth what you've gone through?
>
> A.    No, ma'am.

Defendant called one witness, Sheena Vige, who lived across the street from him in the spring of 2022. Her testimony consisted primarily of seeing K.R. and A.O. playing at Defendant's house and coming and going to events with Defendant in his truck. In summary, she observed no unusual behavior, and it appeared to her that the children willingly rode with Defendant.

On June 27, 2024, the jury returned unanimous verdicts of guilty as charged on all counts. Defendant was sentenced on August 1, 2024, as follows: Count I, indecent behavior with a juvenile (A.O.), five years at hard labor; Count II, indecent

12

behavior with a juvenile (K.R.), fifteen years at hard labor, to be served without the benefit of probation, parole, or suspension of sentence; Count III, molestation of a juvenile (A.O.), seven years at hard labor; Count IV, molestation of a juvenile (K.R.), thirty years at hard labor, to be served without benefits; Count V, sexual battery of a juvenile (A.O.), five years at hard labor, to be served without benefits; Count VI, sexual battery of a juvenile (K.R.), thirty years at hard labor, to be served without benefits; Count VII, sexual battery of a juvenile (K.R.), thirty years at hard labor, to be served without benefits. All sentences were ordered by the trial court to run concurrently with one another.

A motion to reconsider sentence was denied by the trial court on August 7, 2024. This appeal followed, wherein Defendant urges two assignments of error:

I.      The evidence introduced at trial, when viewed in the light most favorable to the prosecution, did not prove beyond a reasonable doubt that [Defendant] was guilty of all or any of the crimes for which he was convicted.

II.     The sentences imposed will result in this seventy-four-year-old first felony offender serving a constitutionally excessive sentence of thirty years at hard labor without benefit of probation, parole[,] or suspension of sentence.

## DISCUSSION

### *Sufficiency of Evidence*

Defendant first asserts that the evidence was insufficient to support the guilty verdicts as to all counts. In reviewing claims of insufficiency of evidence, we look to well-settled law:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d

13

559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino,* 436 So.2d 559 (*citing State v. Richardson,* 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson,* 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant argues that he was convicted solely based on the inconsistent testimony of the two alleged victims, which included very few verifiable facts. He asserts that the testimony of both victims changed as the years went by, and there was no physical or forensic evidence produced by the State. Defendant further argues that both the authorities and DCFS conducted inadequate investigations into the allegations against him. He claims that Ms. Rosette's determination that a valid claim of sexual abuse existed against him was based solely on her initial interview with K.R. Defendant further claims that one of the investigating officers was removed from the case after upsetting K.R.'s father and that no attempt was made by the authorities to gather relevant documentary evidence. Accordingly, he argues, there was insufficient evidence to sustain any or all of the convictions. We disagree.

Defendant was convicted of one count of sexual battery of A.O. and two counts of sexual battery of K.R. Sexual battery is defined by La.R.S. 14:43.1(A)(1) as "the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, directly or through clothing," when "[t]he offender acts without the consent of the victim." Both victims testified to multiple instances where Defendant, without their consent, touched and

14

even penetrated them vaginally with his finger, and some of which were witnessed by the other victim.

Defendant was convicted of two counts of molestation of a juvenile, with one count involving each victim. Louisiana Revised Statutes 14:81.2(A)(1) defines the crime of molestation of a juvenile:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

Both victims testified as to several instances where Defendant inappropriately touched their breasts and vaginal areas, both through and inside their clothing, and exposed his penis to them. All of which took place under circumstances where Defendant was in an adult-supervisory role over the victims, either while driving them in his vehicle, or while they were guests in his home. Moreover, there is no dispute as to the differences in age between the victims and Defendant. As stated, some of the incidents were witnessed by the other victim.

Defendant was convicted of two counts of indecent behavior with a juvenile, with one count involving each victim. Louisiana Revised Statutes 14:81(A)(1) defines the crime of indecent behavior with juveniles, as "[a]ny lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons[,]" "with the intention of arousing or gratifying the sexual desires of either person[.]"

Again, both victims testified regarding several instances where Defendant inappropriately touched their breasts and vaginal areas, both through and inside their

15

clothing, and exposed his penis to them. These acts, some of which were witnessed by the other victim, constitute lewd or lascivious acts that Defendant perpetrated on the victims with the intent of arousing or gratifying his sexual desires. As stated, there is no dispute as to the age differences between the victims and Defendant.

"Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical evidence." *State v. Leyva-Martinez*, 07-1255, pp. 6-7 (La.App. 3 Cir. 4/30/08), 981 So.2d 276, 282, *writ denied*, 08-1200 (La. 1/30/09), 999 So.2d 747. This is true even when no medical, scientific, or physical evidence is introduced as proof of a sexual assault. *State v. Rives*, 407 So.2d 1195 (La.1981); *State v. Conley*, 55,269 (La.App. 2 Cir. 1/10/24), 377 So.3d 1264, *writ denied*, 24-192 (La. 9/24/24), 392 So.3d 1140. Further, "[i]t is the factfinder's role to weigh the respective credibility of the witnesses, and the reviewing court will not second-guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the *Jackson* [*v. Virginia*, 433 U.S. 307, 99 S.Ct. 2781 (1979),] standard of review." *State v. Crooks*, 23-218, p. 26 (La.App. 3 Cir. 4/8/11), 374 So.3d 241, 260.

Here, the testimony of the two victims was more than sufficient to establish the guilt of Defendant as to each charge. Despite Defendant's attacks on the credibility of the victims and the State's investigative witnesses, the jury believed the victims' testimony. That is their prerogative, and it is not our role to second guess that decision when all elements of the crimes have been established. Accordingly, Defendant's assignment of error is without merit.

*Excessive Sentence*

Defendant next asserts that the sentences imposed, effectively resulting in thirty years of imprisonment for the now seventy-four-year-old Defendant, are unconstitutionally excessive. We disagree.

This court, in *State v. Soileau*, 13-770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261, has laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4

(La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

Here, in sentencing Defendant, the trial court stated the following:

In sentencing, the Court has to take into consideration the goals of sentencing to be deterrence, rehabilitation[,] and protection of the public. The Court also has to take into consideration the guidelines that are set forth in Article 894.1 of the Code of Criminal Procedure. The Court has taken into consideration aggravating and mitigating circumstances in this matter.

The Court recognizes some of the aggravating circumstances. The Court acknowledges the fact that one of the victims was under thirteen years of age[,] and Mr. Ray was sixty-eight years old at the time of the offense. The defendant's conduct was cruel to say the least. Defendant knew the victims were vulnerable and incapable of resisting due to their age, size and the fact that the defendant was a figure of authority. The Court finds that Mr. Ray used that position and authority to facilitate the commission of the offenses. The Court also recognizes the number of times that the defendant committed such atrocious and heinous acts. Lastly, the Court recognizes that a stay away protective order was placed in this matter. A violation of said order resulted in Mr. Ray's bond being revoked. Absolutely no remorse has been shown by the defendant.

The Court does take into consideration the mitigating circumstances in this matter. The Court finds that Mr. Ray has no history of prior criminal activity and he has led a lawful, abiding [sic] life before the commission of the instant crimes.

The Court has taken all the aggravating and mitigating circumstances into consideration in the sentencing herein. As previously stated, the Court has also taken into consideration the goals of sentencing to be deterrence, rehabilitation and protection of the public. The Court further takes into consideration the guidelines that are set forth in Article 894.1 of the Code of Criminal Procedure.

On Count I, indecent behavior (A.O.), Defendant was sentenced to serve five years at hard labor. The penalty provision for this offense, when the victim is between the ages of thirteen and seventeen, is a fine of not more than $5,000.00 or imprisonment, with or without hard labor, for not more than seven years, or both. La.R.S. 14:81(H)(1).

On Count II, indecent behavior with a juvenile under the age of thirteen (K.R.), Defendant was sentenced to fifteen years at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. Louisiana Revised Statutes 14:81(H)(2), sets forth an enhanced penalty when the victim is under the age of thirteen and the offender is seventeen years of age or older. It provides that the offender in such instance shall be imprisoned "at hard labor for not less than two nor more than twenty-five years[,]" with "[a]t least two years of the sentence imposed . . . [to] be served without the benefit of probation, parole, or suspension of sentence." La.R.S. 14:81(H)(2).

On Count III, molestation of a juvenile (A.O.), Defendant was sentenced to seven years at hard labor. The penalty provision for the offense is a fine of not more than $5,000.00 or imprisonment, with or without hard labor, for not less than five nor more than ten years, or both. La.R.S. 14:14:81.2(B)(1).

On Count IV, molestation of a juvenile (K.R.), Defendant was sentenced to thirty years at hard labor, without the benefit of probation, parole, or suspension of sentence. The penalty provision for this offense, when the victim is under the age of thirteen, is imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years, with at least twenty-five years of the sentence to be served without the benefit of probation, parole, or suspension of sentence. La.R.S. 14:81.2(D)(1).

On Count V, sexual battery (A.O.), Defendant was sentenced to five years at hard labor without the benefit of parole, probation, or suspension of sentence. Louisiana Revised Statutes 14:43.1(C)(1) provides that the penalty for this offense is "imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years."

On Counts VI and VII, sexual batteries (K.R.), Defendant was sentenced on each count to thirty years at hard labor without the benefit of probation, parole, or suspension of sentence. Louisiana Revised Statutes 14:43.1(C)(2) sets forth the penalty for sexual battery of a victim under the age of thirteen as "imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years[,]" with "[a]t least twenty-five years of the sentence" to be served "without the benefit of parole, probation, or suspension of sentence."

It is noted that Defendant was given credit for time served, and all sentences were ordered to run concurrently with each other. Thus, the total time of imprisonment for the seven convictions is thirty years, without the benefit of parole, probation, or suspension of sentence. Additionally, the individual sentences imposed are within the statutory sentencing ranges for each of the offenses convicted. In reviewing the sentences, we are mindful that the Louisiana Supreme Court has repeatedly admonished "that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283. As reflected in its reasons given at sentencing, the trial court considered the nature of the offenses as well as the aggravating and mitigating circumstances deemed most applicable to the facts of this case. We agree with this assessment.

20

The trial court more than adequately considered the particularly heinous nature of the crimes considering the ages of the victims; Defendant's relationship with the victims; his nature and background, including his age; and the impact of these crimes on the minor victims. Accordingly, we look to sentences imposed for similar crimes in other cases for additional guidance.

In *State v. Gaines*, 54,383 (La.App. 2 Cir. 2/22/23), 358 So.3d 194, *writ denied*, 23-363 (La. 6/21/23), 362 So.3d 428, the second circuit considered an excessiveness claim concerning a total sentence of 170 years for multiple charges, including three counts of molestation of a juvenile involving three juvenile victims.[4] In affirming the sentences, the court stated:

> As to the second prong of the excessive-sentence test, the sentence of 50 years at hard without benefits for both counts of molestation of a juvenile is not constitutionally excessive. The State points out that the sentencing range for each count of molestation of a juvenile is 25 to 99 years at hard labor without benefits. The defendant received a midrange sentence of 50 years for each count of molestation of a juvenile rather than the maximum sentence of 99 years for each count, and the total sentence of 170 years at hard labor for victims M.H., C.E., and A.B. [is] not constitutionally excessive. The sentences are not out of proportion to the seriousness of the offenses and do not purposely and needlessly inflict pain and suffering.

*Id.* at 202.

In *State v. Bridgewater*, 22-517 (La.App. 5 Cir. 4/26/23), 362 So.3d 998, the defendant argued that his sentence of thirty years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, for one count of sexual battery of a juvenile under the age of thirteen was excessive. He argued that he was a first-time offender, and his "conviction was premised largely on through-the-clothing touching which, while illegal, is on the lower end of the scale of the

---

[4] Sentences for the multiple convictions, ordered to run consecutively, totaled 170 years, which included three fifty-year sentences for molestation of a juvenile under the age of thirteen.

21

proscribed criminal conduct[]" under the sexual battery statute. *Id.* at 1009. Although twenty-five years was the minimum term of imprisonment authorized under the penalty provision, the defendant asserted that even that would be cruel and unusual punishment under the circumstances.

The fifth circuit rejected the defendant's argument and affirmed the sentence. In doing so, it set forth a review of similar cases together with its analysis, which we deem applicable here as well:

> In [*State v.*] *Howard*, [18-159 (La. App. 5 Cir. 11/7/18), 259 So.3d 583, *writ denied*, 18-2034 (La. 4/29/19), 268 So.3d 1031,] the defendant was convicted of indecent behavior with a juvenile under the age of thirteen (count one) and sexual battery of a juvenile under the age of thirteen (count two). As to count two, the defendant was sentenced to forty years at hard labor, without the benefit of parole, probation, or suspension of sentence. This court declared that the fact that the defendant accomplished his crimes without the use of weapons did not negate the fact that his ability to overpower his victims was made possible through his superior height, weight, and strength. The defendant also had a position as a trusted authority figure within the home, which he exploited to commit his crimes.

> The State also cites to *State v. Lilly*, 12-8 (La. App. 1 Cir. 9/21/12), 111 So.3d 45, *writ denied*, 12-2277 (La. 5/31/13), 118 So.3d 386. In *Lilly*, the defendant was convicted of sexual battery in violation of La. R.S. 14:43.1(C)(2) and was sentenced to thirty-five years at hard labor. The victim was four years old at the time of the incident. On appeal, the defendant argued that the sentence was excessive for a fifty-seven-year-old first-felony offender where the State, at most, proved a fingertip touching of the victim's vaginal area. The appellate court upheld the sentence, noting that the victim's age made her particularly vulnerable and that the defendant was in a position of trust as her babysitter. *Id.* at 49-50, 63-64.

> In *State v. Brenckle*, 14-883 (La. App. 5 Cir. 5/14/15), 170 So.3d 1141, 1155-56, the defendant was convicted of the sexual battery of two young children, a boy and a girl. The trial court considered La. C.Cr.P. art. 894.1, in addition to two victim impact statements presented prior to sentencing before it imposed two concurrent forty-year sentences. This Court found that those sentences were not constitutionally excessive, noting that they were less than half the maximum sentences that could have been imposed.

22

Last, the jurisprudence indicates that maximum, or nearly maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile. *State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01), 798 So.2d 234, 239, *writ denied*, 01-2965 (La. 10/14/02), 827 So.2d 414.

*Id.* at 1011-12.

We find that the individual sentences here, resulting in a total sentence of thirty years at hard labor, without benefits, for seven different sexual offenses involving two minors, are not excessive. The sentences were individualized to this particular offender and to the offenses committed, and the trial court adequately assessed the aggravating and mitigating circumstances presented. Additionally, a comparison of sentences imposed for similar crimes is insightful and shows that similar and even harsher sentences have been imposed and upheld as constitutional under similar circumstances. Accordingly, we affirm the sentences imposed.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that the minutes of sentencing and the Uniform Sentencing Commitment Order (USCO) are in need of correction.

We note that both the sentencing minutes and the USCO mistakenly refer to the conviction on Count V as molestation of a juvenile. According to the transcript of the jury's verdict, the written verdict, and the transcript of sentencing, the conviction on Count V was sexual battery. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, this matter is remanded with instructions for the trial court to amend

23

the sentencing minutes and the USCO to correctly reflect the conviction on Count V as sexual battery.

## DECREE

Defendant's convictions and sentences are affirmed. The matter is remanded, and the trial court is ordered to correct the sentencing minutes and the Uniform Sentencing Commitment Order to accurately reflect the conviction on Count V as sexual battery.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**